Good morning, Your Honor. As it pleases the Court, my name is Gary Aber. I represent the Plaintiff, Ina Golod, in this matter, and I think I reserve three minutes for rebuttal. The beginning point, I think, in the appeal in this case, and I don't want to rehash what I wrote in the briefs, is to look at the lower court's opinion. And the lower court identified the motion in this matter as a request to dismiss this case for failure to plead a prima facie case. And then the opinion goes on in three or four different instances in the brief, or in the opinion, to say that the Plaintiff failed to plead a prima facie case because the Plaintiff failed to plead comparators in the case. And as I point out in my brief, I believe that, first of all, under both Twombly, Iqbal, and Phillips, you don't have to plead a prima facie case. That's something that's examined at the summary judgment stage. And more importantly, as to the other issues raised as to, under Twombly and Phillips, the areas that I would address is that you don't have to plead specific facts. The analysis must be context-specific, in this case, in a discrimination case. And as I pointed out in my 28J letter, the Court has just recently decided another Twombly-Iqbal case in the insurance antitrust litigation by Judge Ciarica. But the context in that case is different than in this case, just as the context in this case is different from, and I have trouble pronouncing it, the Supreme Court's Swierczki decision. I think it's Swierczkiewicz. Swierczkiewicz, I'm sorry. In Swierczkiewicz, you had the Plaintiff there was the member of the executive decision-making bodies, and he knew exactly what was happening as was happening. As I did point out in my brief, in this case, Ms. Golad is just another worker bee down in the bowels of the company and didn't even know this was coming until it happened. And her ability to determine the facts before the action occurs, out of the blue, is quite different than in a different context. Ms. Gaber, what in your complaint, and where in your complaint, do you have a vermince from which it could be inferred that the reason for this adverse action was because of her gender, ethnicity, or religion? Because, as it was cited in the complaint, you have this almost 10-year history of treatment of her which would have been less than ideal. Well, but that happens to people. A lot of people are passed over for jobs because they're not team players, they don't have the right skill set. You haven't averred that, number one, the other people were not of her race, gender, or national origin, or religion. You have not averred that she had exactly the same skill set or qualifications or anything else as anyone else. Exactly what is it that you have averred? I've got to tell you that her being passed over is not enough. A lot of people are passed over. It is not just the promotions, Your Honor, but I want to... Where in your complaint have you pled something that would give rise to someone saying, aha, this is possibly, even not just probably, possibly due to either her gender, her ethnicity, or her religion? What averment is there in here? It's a combination, but the specific thing, there is an allegation in the complaint that her appraisals were always either adequate or above average. Okay, but maybe somebody else's were absolutely fabulous. I mean, a lot of people get adequate reviews and they don't move forward in life because maybe they're not team players, maybe they're just not as good as somebody else. But as the complaint indicates that every time she tried to assert that she should have gotten, she had her authority removed. She was moved into dead-end jobs, non-development jobs, jobs that didn't test her exceptional skills. Well, maybe she had communication. There are a lot of things that can give rise to people not succeeding in this world. You do not... You know, the fact that this happened to her, did it happen to other people? Was there something that would make you say, aha, they didn't allow her to have off on this Jewish holiday? Is there something? You know, until very recently, excuse me, I lived in Wilmington. And so I was aware when Bank of America bought MBNA, there was a big downsizing. And a lot of people were let go in connection with that. Is it of the record whether her termination had anything to do with the downsizing? We don't know, Your Honor. In fact, if it was a part of the downsizing... The other thing is, I think I alleged in the complaint... Well, haven't... Oh, excuse me. As an attorney, you haven't looked into that? Well, I didn't get a chance to do any discovery yet, but I do know at about this time, there were numerous people being released. I don't know if this is a part of the formal RIF procedure. I do know in other cases before this court and the district court in Delaware, I have handled RIF cases, which on the summary judgment stage, by the time you get to summary judgment, you can examine the entire RIF process. Here, we have not had a chance to examine the RIF process. But we do know based upon the charge that was filed in this matter, which was adopted as part of the complaint, that an entire class of people all... At MBNA, there was an entire group of Russian Jewish immigrants that had gone to work for MBNA. And they were, by the time that Mrs. Golag was removed from her job, the entire class was removed. And that's... You don't aver that in your complaint? Was adopted by part of the charge, and the charge becomes part of the complaint, I think. But also, the issue that Your Honor raises is an issue that I think is more appropriate for summary judgment stage. Remember, under Twombly and Phillips, at this stage, it's not a matter of probability. It's not even a matter of possibility. It's a matter of plausibility. On a scale of 1 to 10, we're at 1. And then Twombly and Igbal both recognized that if there is a plausibility, then you can look for the evidence that Your Honor suggested in the discovery process. Well, no, but she has to know. It's not something you discover from the defendants. It's something that she has to have a belief that this is based upon an improper motive because something has happened. And so that's something that she has to know when she files this complaint, that this is why I believe that it wasn't because of something else. It's because it's targeted because of this anti-discriminatory, I mean, improper motive. It would be because of this study. Remember, she was hired because of her high level of knowledge. She was given, at first, a quasi-development project, and then it goes down from there. Well, she just made a project manager along the way. No, she was not. At one point, she was taken into a dead-end job, no reports, nobody to support her. But these are things that are examined on the pretext. If Your Honor, for instance, says she didn't measure up to comparators, as the defendant might argue, that's the pretext argument. She was moved to a position of project manager in April of 2003. Right. But then after that, I believe the complaint goes on to say that she was moved down. Maybe she didn't perform well. Maybe not, but that's something that would come out in discovery. But let me ask you, as a practical matter, is there anything other than the fact that she was not moved forward, and we don't know if other people were moved forward at all, is there anything else that would say, cause you to say, aha, this is because she's a woman, this is because she's a Russian, this is because she's a Jew? The denial of even the opportunity to further her knowledge and education, that is alleged in the complaint. She didn't even have the chance to say, well, maybe I'm not measuring up for that promotion. Let me go train in an on-computer challenge so I can't figure out. I don't think you're addressing the question. I'm sorry? I don't think you're addressing the question, other than the fact that she did not receive promotions to which she thought she was entitled. There were. And that she may have received what we could call to be demotions whenever she complained about it. Is there anything in the complaint that would indicate that this was because of an illegal reason? She referred to specific years when she sought promotions and it was denied. Then she's denied educational opportunities. Then her support staff is taken away from her. Then she has no authority over everybody. It's this down, going down a set of stairs to basically, from somebody who is a project manager, basically denied training, denied authority, denied staff. It just kept getting worse and worse until she was eventually denied. That course of, that historical course suggests that with discovery that you could find more evidence of discriminatory animus, plus with the fact. Does, I'm sorry, does, okay, I'm sorry. I didn't mean to cut you off. I recognize your Honor's authority. No, no, finish the sentence here. The, plus the fact, as alleged in the charge, that you have all the other immigrants being moved out at the same time. And these, this raises the specter of discrimination. Remember, under Fuentes, one of the methods of proving discrimination is other people in the same class being treated in the same way. Does, what in the complaint? I'm sorry? What in the complaint puts the defendant on notice that she was discriminated against because of race, ethnicity, or religion? I think it states in the complaint that she's a member of protected class. No, no, it states that. But what? I know it states that she's a member of protected class, but what? It doesn't use the term protected class, but alleges what she is. And then it goes down through the history of a consistent downgrading of her within the company while she has not only adequate but exceptional evaluations. And you don't generally get somebody downgraded while they're being appraised as adequate and as exceptional. Those, I think those together show it. But then she was evaluated as adequate and exceptional. So there's something, there's discrimination. Exactly, Your Honor. She's being downgraded as she's being evaluated as above average or exceptional. But then that, I don't know why that would then kind of raise your antenna. To my mind it says, you know, she was doing well in this position, but, you know, the skill set wasn't right for the next one, or there's some other basis. Because at least she was given good appraisal, so it wasn't, you know, totally, you know, discriminated against, or else her evaluations probably wouldn't have been any good. Then why was she denied educational opportunities? Why was, why were? Maybe they had a cutback on spending money for educational opportunities. And everybody, you don't aver that she was treated differently. You do not aver that she was treated differently. But I don't have to. Well, but you have to do something that raises an inference of discrimination. And treated differently usually does, or something else. But she didn't have knowledge of the comparators. Remember, she's not keeping historical records. She doesn't. No, she's observing people around her. I'm just talking about other cases we have where, and I don't mean to argue with you, but in a lot of cases we do have situations where someone says, you know, this person got this, and the next day this was denied me, and I asked, and they gave, you know. And people observe, and they put that into their complaint. I'm not going to, I don't want to say she's not familiar with our legal system, but under Fuentes there's any number of different ways of proving. I agree comparators are a tool that I've used and can be used. But you have pretext. You have the fact that other Russian Jews are being moved out. You have the fact that then you can use comparators. Remember, there's two prongs under Fuentes. And under the second prong, comparators are only one of three methods. You're saying the charge, the EEO charge here that you filed contended that all, that other people, all other Russian Jews were being eliminated? Yes, Your Honor. That's not in the complaint, though. No, it's, well, it's adopted, it's incorporated in the complaint, and it's attached as an exhibit. I think I can point you out to precisely. Okay, I have that. Did the judge mention that issue? What? Did the judge address the EEOC charge? No, it wasn't even, if I read, and I went back and read his opinion, obviously in context of today, he seemed to, and I'm out of time, but he seemed to be directing his opinion on failure to allege comparators, and the failure to allege a prima facie case. Now, you, one other question. You were given a chance to amend the complaint, and you did amend it, but you didn't amend this part. I did amend it as to the state claim. Right. The arguments made by the defendants, as the court announced in its opinion, the defendant moved to dismiss this case because of the failure to plead a prima facie case. And my argument, and the defendant, the appellee mentions it in his brief that I shouldn't have used, where did I go with that name? Shveritz. Swerkovitz. Swerkovitz. I'm criticized for using that because that case specifically held you don't have to plead a prima. So I didn't, I don't think that my failure to amend where I believe in good faith that I don't have to plead a prima facie case warrants my not being denied an amendment, especially, and I am familiar with the court's very recent case, which I, but about dealing with amendments and the difference between the Title VII and the 1980, 1981, or civil rights case. But in the civil rights case, the law of this circuit is that I'm absolutely entitled to a right to amend. All right. Why don't we, we'll have you back on rebuttal. Let's hear from your opponent. Mr. Marcus. Good morning. Good morning, Your Honor. May it please the court. My name is Elena Marcus, and I represent the appellees in this matter, Bank of America Corporation, Bank of America Technology Operations, and MBNA Technology, Inc. There are two principal issues before this court as I see them. First, did the district court err in dismissing plaintiff's discrimination and retaliation claims under Federal Rule 12b-6 for failure to state a claim? And second, did the district court err in dismissing plaintiff's complaint without Sua Sponte offering for a second opportunity to replete her claims? Unless the court prefers otherwise, I will address these issues in turn. The first issue involves the following question. Under the Supreme Court's decisions in Bell Atlantic v. Twombly and Ashcroft v. Iqbal, how much factual matter must be pled in support of discrimination and retaliation claims in order to avoid a motion to dismiss? This is an issue that many courts are currently struggling with and I suggest will continue to struggle with after this case. That is because there can be no bright-line rule. It instead involves a fact-specific and, as the Supreme Court has said, a context-specific analysis. I believe the Supreme Court's language in Iqbal and Twombly is the obvious place to start. The court is familiar with it. I will summarize it very briefly. In Iqbal, the court said to survive a motion to dismiss, the complaint must contain sufficient factual matter except it is true to state a claim for relief that is plausible on its face. It explains a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. It explains that that's more than a possibility. Right. You've heard our questions to Mr. Aber. So what would have been sufficient to survive 12B6 motion in this case? What should have been pled that wasn't pled? I think Judge Rendell's questions got to some of it. There's a lot of things that could have been pled. She could have pled that the other people who received promotions or received other employment opportunities were outside of her protected class. She could have explained. Now, what degree of factual specificity would that require? That is, would it be sufficient simply to say there are comparators here that are outside any protected class that got the benefits that I was denied and then perhaps list them by name? Is anything more than that required under the circumstance? I think I appreciate your question. I think it's hard to answer because in this case, she doesn't even identify in particular what things she was denied. But I think if she had said on this date or this month or even perhaps this half year, I asked for this particular opportunity or this particular promotion and it was I was qualified for it and it was given to someone else outside of my protected class, ideally who was less qualified or equally qualified, that would be sufficient. There's none of that detail in this complaint. I understand there's no detail. But let me ask you, would that be sufficient? It still doesn't say, can you draw an inference that an improper motive or reason was behind that decision? I think we have to look at the case, we would have to look at the complaint in the context that a court would look at it on a prima facie level. I think it would be too much to ask them to prove their case. And I don't think that's what Twombly and Iqbal require. But at the prima facie level, the general statement is there has to be enough fact to allow the inference. And I think there's no easy answer to the question. I think it would depend on exactly what was pled, whether it would be sufficient to raise an inference. In some cases, yes. In some cases, no. How about the attachment of the EEO charge that says, ultimately, after all Russian born female workers based on their national origins complained about their treatment to respondents, specifically managers, Jim Checkadel, Martin Schoenwald, Tim Sheldon, Rick Bonner, HR representative Renee Cuffey-Williams and others unsuccessfully, charging party states that as a group on November 17, 2006, her female Russian co-workers and she had their employment relationships ended by a respondent. Is that a sufficient allegation? I don't think so, Your Honor. And this is why. I think there's a couple of points that are interesting about that. First, yes, the charge of discrimination is attached. It is not, however, specifically incorporated in the complaint. It's attached as an exhibit to establish that they have satisfied the jurisdictional prerequisite for coming into court, that is, have gone to the EEOC and gotten a notice of right to sue. There's no explicit incorporation into the complaint. Moreover, if that was a key fact to plaintiff, that should have been in the complaint, in the facts of the complaint as set out. There's other allegations in this charge that are not incorporated in the complaint, and counsel came in and decided which facts he believed were important to this case and pled those facts. So that's how I would respond on that. Moreover, and excuse me, yes, if it were, if it were pleaded in the complaint, would that be sufficient? I'm looking at, I'm trying to look at the allegation itself specifically. I believe what it says that the, that other Russian foreign female workers complained. They said as a group, they were, they had their relationships ended on a certain date. I don't think that is enough to get them to, to, to satisfy the Twombly standard, just because, just because someone complained that it had something to do with their national origin, or race, or sex, or what have you, doesn't give you enough to show that you can show an objectively reasonable complaint, which is absolutely necessary under the law. There have to be facts that show that that complaint is objectively reasonable. And I think that is what is required by Iqbal and Twombly. Well, it's pretty, I mean, if that's not accurate, it's quite a pleading that as a group, her female Russian co-workers and she had their employment relationships ended, that they took them all as a group and fired them. You're saying that's not enough? That was never specifically incorporated in the complaint. No, I know that, but, but following on Judge Sirica's question, if it were, would it be enough? I don't think so, and it's, and it's because of the objectively reasonable, just because someone complained doesn't mean that their complaint has any merit, that there's any facts to support it. And that's what they would need to plead in order to show discrimination on the one hand, and retaliation on the other hand, that there was an objectively reasonable complaint. It has, I'm not sure it has to be objectively reasonable in that sense. I believe, maybe I need to be clearer on that. In order to establish protected activity, which is an absolute prerequisite for a retaliation claim, the complaint must be both subjectively, subjectively of discrimination and objectively reasonable complaint of discrimination. And that's where you go back to look at the actual facts that are pledged to see whether they are pledged and described later whether there's an objectively reasonable complaint of discrimination. You can't remember people's names, so what do I do if I'm trying to complain about who got the job when I didn't get the job? Well, I think you can certainly aver as to what that person looked like in this case. Ms. Golad is saying that she is a Russian-born female. If it was a man, she could certainly allege that it was a man. In April 2005, she applied for this promotion. She was qualified, and a man got the job. She hasn't done that. I think what Twombly and Iqbal mean for discrimination and retaliation cases is that the nature of the claim is discrimination and retaliation, but must plead facts that indicate that the complaint of event occurred because of the protected characteristic or because of protected conduct. And the allegations of plaintiff's complaint in this case, that she was in a protected class, that she was highly educated, and that her performance met. And importantly, she does plead that her performance met or exceeded, met or exceeded defendant's expectations, that she was not afforded opportunities, responsibilities, and promotions that she believes to be commensurate with her skills and abilities, that she complained about this, and that she was ultimately terminated. I do not believe that that rises to the standard. And I would ask the Court to look back specifically at the actual complaint allegations, because they are very unspecific. Why shouldn't, why shouldn't we send this back to the District Court and ask the District Court to give Ms. Collett a chance to amend the complaint? Your Honor, the answer is because she already had the opportunity. She declined the opportunity. She, in fact, after we moved to dismiss in this claim, in this case, she opposed the claims were sufficiently pled. Shortly thereafter, she did file a motion to amend in which she sought to amend the state claim. But she stood on her claims on the discrimination and retaliation claims. She's continued to argue that her claims are sufficiently pled, even here today and in her briefing before this Court. She has not proffered any facts that could possibly suggest an inference of discrimination. As a result, I think the Court was perfectly within its discretion, and it is an abuse of discretion standard to find that Ms. Collett had stood on her claims, stood on her allegations. They were not sufficient, and she'd gotten the opportunity that's required by this Court to amend it. Is the law clear that the complaint does not necessarily adopt the EEOC charge, that these matters have to be pleaded in the complaint? Well, I can say that the complaint itself, in this case, does not adopt the EEOC charge. She says nothing. She says, I filed this charge. She doesn't adopt it. She doesn't incorporate the language. Importantly, she also never argued below or in this Court about the facts on the EEOC charge until standing here. She had many opportunities below to point that out in opposition to the motion to dismiss or even in arguing the motion to amend or, in fact, after the judgment had been entered. She could have filed a motion for reconsideration. I think it's called a re-argument in the District of Delaware or a motion under Rule 59 and say, Your Honor, you didn't look at this, and this is a key fact. She didn't do that. I think she had her opportunity to do that. She didn't do it. The Court was within its discretion to dismiss this case. Unless the Court has further questions for me regarding these arguments or other matters in the brief, I will stand on my brief and rest my argument. Any questions? Good. Ms. Marcus, thank you very much. I thank the Court for its attention. Mr. Abrams? I want to address promptly the issues raised by Judge Rendell about the complaint. Because if you go back and look at the complaint, at paragraph 20, it actually alleges that the plaintiff was moved from the development area to a project office, which was considered a step down. In 21, it says that she exceeded – her evaluations exceeded expectations. In paragraph 24, it says she was offered jobs outside her department, which did not require her professional technical expertise. And if I remember, the complaint alleged she was well qualified, a master's degree in computer technology and such. And then in 25, it says she was denied every educational opportunity for which she applied. And Judge Roth mentioned that we in Delaware were familiar with NB&A. They had classes all over the place. It wasn't that they decided not to educate people. They just chose not to educate her. And then the issue of comparators comes up. And while I dispute the defendant's argument – and they stated to the court below that I cannot proceed in this case unless I plead comparators – that was in the plaintiff's lower court briefs. In the opening brief – and it's in the appendix at A44 and in the reply brief at A121 – they specifically told the court the plaintiff can't be successful unless they plead with specificity comparators. That's just wrong, bad law. And the court, unfortunately, adopted it and said you can't win without comparators. But if you look at the complaint, at paragraph 26, it says the plaintiff was continually denied promotions even though individuals with less experience were promoted. That's an allegation of comparators. MS. BENTON. Less experience, but maybe their skill set was better. Maybe they were better team players. Maybe they had certain qualities for the job that were necessary.  CLEMENT. Maybe, Your Honor. First, I don't have to plead comparators. Secondly, that's what you develop in discovery, and that's the discussion we will have at summary judgment stage, but not at the motion to dismiss stage. MS. BENTON. Mr. Aver, your opponent says that you didn't really raise this issue of the EEO charge until today, and I really don't see that in your briefs, that you're saying that that should – MR. CLEMENT. I do believe it is in one of my briefs. I could take a chance to look at it again. But then, just one more on Your Honor's point. In paragraph 27, it says they denied her authority that was given to other employees with her same job duties. So there were allegations that would lead one to believe that there was a plausible comparator argument to be made, and as to the adoption of the EEO charge, paragraph 33 of the complaint specifically adopts paragraphs 1 through 32, which include the reference to the EEO charge attached as an exhibit. And if you want, I will take a second and look through my – I think it was in my reply brief that I mentioned the EEO charge. But with those facts, I think there is any reasonable – maybe I shouldn't use that any court reviewing this complaint would say there is a plausibility. Remember, as Justice Souter said when he dissented in Igbo, or if you remember, Justice Souter wrote Twombly, but he dissented in Igbo, and he emphasized the fact that even if a savvy judge doesn't think I could be successful, I should be allowed to go forward – and Judge – Justice Souter used the example – unless I allege little green men or my trip to the moon or something, I should be allowed to proceed. The issue is plausibility. Your Honors may believe, and maybe when discovery comes up, I'll believe that I'm not successful. And as an officer of the court, I may not proceed once I get into discovery. But I should be allowed at that opportunity because I believe the complaint does show the plausibility of a successful case. If you were allowed to amend your complaint, would you? In the face of what's happening – yes, of course, Your Honor. I'm not going to – at this stage, I'm not – you know, I – the reason I did not do it because I thought the defendant was advancing an argument that was wrong under the case I can't pronounce again. Yes, please. She was saying I have to plead prima facie case elements, which I don't. And that's what my answering brief in the court below was. But the court adopted that I do have to plead a prima facie case. And then you're saying if the court would have given – once it decided that, if it would have given you another chance, you would have pled them? I would have. And under – I don't want to emphasize, but under 42 U.S.C. 1981, the Civil Rights Act of 1960 – of 1866, this court has held that in a civil rights case, I must be given that opportunity. I do realize that the court has hinted in other decisions that that rule may not apply in Title VII cases. But in a 1981 case, I'm entitled to it. Thank you very much, Mr. Draper. The case was well argued. We will take the matter under advisement.